UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

Daniel M.,[1]

               Plaintiff,

      v.                                                      23-CV-0671-LJV
                                                                DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

———————————————————

On July 10, 2023, the plaintiff, Daniel M. ("Daniel"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On October 11, 2023, Daniel moved for judgment on the pleadings, Docket Item 4; on November 9, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 6; and on November 27, 2023, Daniel replied, Docket Item 7.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Daniel applied for Disability Insurance Benefits ("DIB"), which includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court denies Daniel's motion and grants the Commissioner's cross-motion.[3]

## <u>STANDARD OF REVIEW</u>

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I.    THE ALJ'S DECISION

The ALJ found that Daniel had not been under a disability from February 29, 2020, through March 13, 2023, the date of the decision. *See* Docket Item 3 at 47; *id*. at 30. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id*.

At step one, the ALJ found that Daniel had not engaged in substantial gainful activity since February 29, 2020, his alleged onset date. *Id*. at 31. At step two, the ALJ found that Daniel suffered from two severe, medically determinable impairments: "depression and polyarthropathy." *Id*.

At step three, the ALJ found that Daniel's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id*. at 34. More specifically, the ALJ found that Daniel's physical impairments did not meet or medically equal listing 1.18 (abnormality of a major joint in any extremity). *Id*. at 34-35. Likewise, the ALJ found that Daniel's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders). *Id*. at 35. In assessing Daniel's mental impairments, the ALJ found

that Daniel was: (1) mildly limited in understanding, remembering, or applying information; (2) moderately limited in interacting with others; (3) mildly limited in concentrating, persisting, or maintaining pace; and (4) mildly limited in adapting or managing himself.  *Id.* at 36-37.

The ALJ then found that Daniel had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 C[.]F[.]R[. §] 404.1567(a)" except that:

> [Daniel] can lift, carry, push, and/or pull 10 pounds occasionally and 5 pounds frequently, stand and/or walk 2 hours total in an 8-hour workday with normal breaks, and sit 6 hours total in an 8-hour workday with normal breaks.  [He] can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds.  [He] can occasionally balance, stoop, kneel, and crouch.  He can never crawl.  [He] can frequently handle, finger, and feel objects bilaterally.  He can never work around excessive vibrations or hazards, such as[] unprotected heights, moving machinery, etc.  [He] can perform simple, routine tasks that can be learned after a short demonstration or within 30 days.  He can occasionally interact with the public, co-workers, and supervisors.

*Id.* at 38.

At step four, the ALJ found that Daniel no longer could perform any past relevant work.  *Id.* at 44.  But given Daniel's age, education, and RFC, the ALJ found at step five that Daniel could perform substantial gainful activity as a document preparer, final assembler, or nut sorter.  *Id.* at 45-46; *see Dictionary of Occupational Titles* 249.587-018, 1991 WL 672349 (Jan. 1, 2016); *id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016); *id.* at 521.687-086, 1991 WL 674226 (Jan. 1, 2016).  Therefore, the ALJ found

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

that Daniel had not been under a disability or entitled to DIB since his application was filed on September 15, 2021.  *See* Docket Item 3 at 47.

## II.    ALLEGATIONS

Daniel argues that the ALJ erred in two ways.  Docket Item 4-1 at 1.  First, Daniel argues that the ALJ erred in finding the opinion of a consultant psychologist, Gregory Fabiano, Ph.D., persuasive without explaining why the RFC did not include the mild to moderate limitations that Dr. Fabiano found.  *Id.* at 11-13.  Second, Daniel argues that the RFC limiting him to frequently handling, fingering, and feeling objects bilaterally "is unexplained and unsupported by substantial evidence."  *Id.* at 9.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A.  Dr. Fabiano's Opinion

Daniel argues that the ALJ erred in finding Dr. Fabiano's opinion persuasive but not explaining why the RFC did not incorporate the mild and moderate limitations that Dr. Fabiano found.  Docket Item 4-1 at 11-13.  But the RFC indeed incorporated Dr. Fabiano's limitations, and Daniel's argument is therefore misplaced.

On December 28, 2021, Dr. Fabiano completed a psychiatric evaluation addressing Daniel's mental abilities and aptitudes.  Docket Item 3 at 486-91.  Dr. Fabiano observed that Daniel's responsiveness to questions was cooperative and that his thought process appeared coherent and goal directed with no evidence of hallucinations, delusions, or paranoia.  Docket Item 3 at 487-88.  Dr. Fabiano found Daniel's attention and concentration to be intact, but he opined that Daniel was mildly impaired in recent and remote memory skills "due to anxiety and nervousness in the

5

evaluation." *Id.* at 488.  According to Dr. Fabiano, Daniel had a mild limitation in understanding, remembering, or applying simple directions and instructions and moderate limitations in understanding, remembering, or applying complex directions and instructions; interacting adequately with supervisors, co-workers, and the public; and regulating emotions, controlling behavior, and maintaining well-being.  *Id.* at 489.

The ALJ found Dr. Fabiano's opinion "persuasive."  Docket Item 3 at 44.  The ALJ explained that although "Dr. Fabiano examined [Daniel only] once and did not have a good longitudinal view of [Daniel's] impairments or functional limitations, his opinion is consistent with [Daniel's] subjective complaints, the essentially normal mental status examinations, and [Daniel's] activities, which included cooking, cleaning, childcare for an infant and small child, caring for his spouse, caring for the cats and chickens, cleaning the chicken coop, driving, handling his finances, etc."  *Id.* (citing *id.* at 285-301, 360-481, 486-514, 519-56, 562-88, 621-91).

Contrary to Daniel's argument, limiting him to no work around hazards and excessive vibrations; "simple, routine tasks that can be learned after a short demonstration or within 30 days"; and only occasional interaction with supervisors, co-workers, and the public, *id.* at 38, adequately accounts for Dr. Fabiano's mild and moderate limitations.  More specifically, the limitation to simple tasks that can be learned with minimal instruction accounts for Daniel's mild limitation in understanding, remembering, or applying simple directions and instructions and his moderate limitation in understanding, remembering, or applying complex directions and instructions. *Compare id*. (RFC), *with id*. at 489 (Dr. Fabiano's opinion).  Likewise, the limitation to only occasional interaction with supervisors, co-workers, and the public accounts for

Daniel's moderate limitations in interacting adequately with supervisors, co-workers, and the public. *Compare id*. at 38 (RFC), *with id*. at 489 (Dr. Fabiano's opinion).  And both those limitations in the RFC, along with the limitation to no hazardous work, *see id*. at 38, should account for Daniel's moderate limitations in regulating emotions, controlling behavior, and maintaining well-being.  *See* 20 CFR Pt. 404, Subpt. P, App. 1, § 12.00A.2.b. (domain of regulating emotions, controlling behavior and maintaining well-being includes responding to demands of others, adapting to change, being aware of normal hazards, and taking appropriate precautions, etc.).

Indeed, courts in this Circuit have repeatedly found RFC restrictions like those here sufficient to account for limitations like those about which Dr. Fabiano opined. *See, e.g., Allisa P. v. Comm'r of Soc. Sec.,* 2024 WL 278227, at *10 (W.D.N.Y. Jan. 25, 2024) ("Dr. Farmer's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is consistent with the ALJ's RFC finding for simple, unskilled work involving limited social interaction."); *Koza v. Comm'r of Soc. Sec.,* 692 F. Supp. 3d 197, 204-05 (S.D.N.Y. 2023) (ALJ properly accounted for claimant's moderate limitations in regulating emotions, controlling behavior, and maintaining well-being by limiting claimant to only occasional contact with others); *Hill v. Comm'r of Soc. Sec.,* 2020 WL 836386, at *4-5 (W.D.N.Y. Feb. 20, 2020) (RFC limiting plaintiff to "performing simple, routine and repetitive tasks and simple work-related decisions, and only occasional interaction with co-workers and the public" adequately accounts for even "marked" limitations in a claimant's ability to adapt or manage oneself); *Brogdon v. Berryhill,* 2019 WL 1510459, at *14 (S.D.N.Y. Mar. 22, 2019)

(limiting plaintiff to simple work-related tasks with only occasional contact with others accounted for her memory limitations).

In sum, because the RFC addressed the limitations found by Dr. Fabiano, the ALJ did not err.

### B. RFC Limitations

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Daniel argues that "[b]ecause the RFC does not align with any" opinion in the record, "it is clear that the ALJ rejected all of the opinion evidence" related to handling, fingering, and feeling. Docket Item 4-1 at 9. For that reason, Daniel says, the "limitation . . . to frequent handling, fingering, and feeling is unexplained and unsupported by substantial evidence." *Id.* But Daniel is incorrect for several reasons.

First, contrary to Daniel's argument, "there is no blanket requirement that [an ALJ's] decision must be supported by a congruous medical opinion for it to meet th[e] evidentiary standard." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.,* 116 F.4th 145, 155 (2d Cir. 2024). Because he thoroughly addressed Daniel's symptoms, the medical evidence, and Daniel's activities of daily living in finding that Daniel could frequently handle, finger, and feel objects bilaterally, Docket Item 3 at 38-47, the ALJ did not err.

Moreover, the limitation to frequent[5] handling and fingering is supported by the opinion of State Agency Review Physician S. Putcha, M.D. Docket Item 3 at 125-27. On April 13, 2022, Dr. Putcha opined that Daniel was able to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and occasionally climb ramps, stairs, ladders, ropes, and scaffolds, as well as kneel, crouch, and crawl. Docket Item 3 at 125-27. Most significantly here, Dr. Putcha found that Daniel had no manipulative limitations. *Id.* at 127.

The ALJ found Dr. Putcha's opinion partially persuasive, reasoning that it "is consistent with [Daniel's] subjective complaints, the essentially normal diagnostic testing[, and the] physical examinations" as well as with Daniel's "decreased motion and upper extremity weakness[] and [his] activities." Docket Item 3 at 43 (citing *id.* at 285-301, 360-481, 486-514, 519-56, 562-88, 621-91). But the ALJ "looked at the evidence in a light most favorable to [Daniel] and determined that he had greater limitations" than Dr. Putcha found "based on [Daniel's] subjective complaints." *Id.* And the ALJ therefore

---

[5] "Frequently" means "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). So limiting a claimant to doing a task only "frequently" is a more significant limitation than one might think.

fashioned an RFC that accounted for Daniel's more severe limitations—including a limitation to only frequent handling, fingering, and feeling—in contrast to Dr. Putcha's opinion that Daniel had no manipulative limitations. *Compare id.* at 38 (RFC), *with id*. at 43 (ALJ's noting Dr. Putcha's findings and citing *id*. at 127); *see Larson v. Comm'r of Soc. Sec.,* 2020 WL 5018331, at *11 (W.D.N.Y. Aug. 25, 2020) ("In assessing the additional postural, handling, and fingering limitations, the ALJ seemingly gave Larson some benefit of the doubt regarding her complaints of pain and the restrictions Larson herself claimed were associated with her [impairment].").

The ALJ certainly did not err to Daniel's detriment in finding limitations greater than those found by Dr. Putcha.  To start, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining [s]tate agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.,* 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016); *see also Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.,* 2024 WL 3696293, at *6 (N.D.N.Y. Aug. 15, 2024) ("As a threshold matter, the opinions of consultative examiners and state agency non-examining consultative physicians can constitute substantial evidence in support of the ALJ's decision.").  So the ALJ did not err in relying on the opinion of a state agency review physician.

Furthermore, the ALJ was entitled to deviate from Dr. Putcha's opinion and find Daniel more limited based on the record as a whole.  *See Spottswood v. Kijakazi,* 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) (affirming where RFC was "slightly more restrictive" than concluded by consultative examiners and state agency consultants because record suggested greater limitations); *Angela H.-M. v. Comm'r of Soc. Sec.,*

631 F. Supp. 3d 1, 12 n.5 (W.D.N.Y. 2022) (finding no error where ALJ "assessed an RFC containing more restrictive limitations than those assessed by Dr. Gilga, which did not fully account for [p]laintiff's . . . manipulative . . .  limitations"); *McLeod v. Berryhill,* 2018 WL 4327814, at *3 (W.D.N.Y. Sep. 11, 2018) (consultative examiner's opinion supported RFC finding, and "'the fact that the ALJ's RFC assessment did not perfectly match [an examining medical source]'s opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").  Indeed, this Court has repeatedly rejected the argument that an ALJ errs when the ALJ's more-restrictive limitations do not align with the opinion of any medical provider.  *See, e.g., Joseph M. v. Comm'r of Soc. Sec.,* 2024 WL 5247704, at *5 (W.D.N.Y. Dec. 30, 2024); *Christopher G. v. Comm'r of Soc. Sec.,* at *3 (W.D.N.Y. Sep. 26, 2024); *David M. v. Comm'r of Soc. Sec.,* 2023 WL 5200160, at *4 (W.D.N.Y. Aug. 14, 2023).

What is more, Dr. Putcha's opinion was not the only one that supported the RFC. For example, John Schwab, D.O. completed a neurologic examination of Daniel on December 28, 2021, and found that Daniel's hand and finger dexterity were "intact" and that his grip strength was 5/5 bilaterally.  *Id.* at 493.  Dr. Schwab opined that Daniel had a moderate restriction with prolonged use of his hands, Docket Item 3 at 494, but that is consistent with the RFC's limitation to only frequent manipulative tasks.  *See Damian B. v. Comm'r of Soc. Sec.,* 2025 WL 2331350, at *10 (W.D.N.Y. Aug. 13, 2025) ("A limitation to 'frequent' performance of an activity in physical work-related functioning is consistent with a finding of 'moderate' limitation." (citing *Gabrielle C. v. Comm'r of Soc. Sec.,* 2023 WL 5200159, at *2 (W.D.N.Y. Aug. 14, 2023))); *Robin D. v. Comm'r of Soc. Sec.,* 2021 WL 9583500, at *6 (W.D.N.Y. Sep. 14, 2021) ("Dr. Figueroa's 'moderate'

limitation to prolonged repetitive fine motor skills does not suggest that [p]laintiff could not perform frequent fingering and handling.")

Along the same lines, A. Periakaruppan, M.D., opined that Daniel "had no severe physical impairment." *See* Docket Item 3 at 42 (citing *id.* at 517-18). The ALJ found Dr. Periakaruppan's opinion unpersuasive but only because Daniel's limitations were greater than the doctor opined. And as noted above, because that finding by the ALJ benefitted Daniel, it is not an error about which Daniel can complain.

In sum, contrary to Daniel's argument that the ALJ rejected "nearly all of the opinion evidence [that] found significant hand limitations and was clearly inconsistent with a limitation to frequent handling, fingering, and feeling," Docket Item 4-1 at 9, the opinions of several physicians supported the ALJ's findings. And it is the duty of the ALJ to choose the most persuasive opinions in fashioning a claimant's RFC. *Jennifer Lee W. v. Berryhill,* 2019 WL 1243759, at *6 (N.D.N.Y. Mar. 18, 2019) (it is the ALJ's role "to choose between properly submitted medical opinions"); *Nesiba O. v. Comm'r of Soc. Sec.,* 2019 WL 464882, at *7 (N.D.N.Y. Feb. 6, 2019) ("It was within the ALJ's purview to review the opinions of record and weigh them accordingly along with [p]laintiff's testimony, reports, and treatment history to determine her RFC.").

Daniel's activities of daily living lend further support to the RFC. *See Rusin v. Berryhill,* 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with his report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980) (plaintiff's ability to cook, shop, wash, and sew supported the ALJ's determination that she could perform sedentary work despite pain). For

example, Daniel's function report dated March 17, 2022, notes that he cares for his two-year old child, makes breakfast and dresses his children, opens the chicken coop, packs his son's backpack and puts him on the bus, cares for his wife, cleans the kitchen and living area, makes lunch and dinner, helps his children with homework, and puts them to bed.  Docket Item 3 at 295, 301.  Daniel also prepares food a few hours each day and spends significant time washing dishes, sweeping, vacuuming, dusting, mowing the lawn, raking, and doing laundry.  *Id.* at 296.  Daniel's pain questionnaire dated March 14, 2022, likewise notes that he washes dishes, vacuums, shops for groceries, and drives his children to school and for activities.  *Id.* at 286.

Finally, the ALJ very carefully addressed whether Daniel could perform the jobs suggested by the vocational expert ("VE").  During the hearing, the ALJ noted that the jobs suggested by the VE seemed to require workers to "us[e] their hands constantly," and he asked whether "tho[s]e jobs [can] be done with the limitation to frequent handling, fingering[,] and feeling of objects."  Docket Item 3 at 96.  The VE responded that "[p]er the [Dictionary of Occupational Titles], they're using their hands frequently." *Id.*  The ALJ also asked the VE about the aptitude levels of finger dexterity, but the VE could not answer those questions during the hearing.  *Id.* at 98-99.  The ALJ nevertheless noted in his decision that he looked at the aptitude levels and found that the "jobs identified by the [VE] were all level [three] or [four] for finger dexterity and manual dexterity," which "equates to being in the 10th percentile to 1/3 of all the jobs that require handling and fingering."  *Id.* at 46.  And the ALJ concluded that "pursuant to the DOT, the aptitudes for fingering and handling, though frequent, do not require

particularly skillful or rapid or accurate movements" and that "the hypothetical individual" therefore "could perform the jobs identified" by the VE." *Id.*[6]

In sum, the ALJ's RFC finding that Daniel could only frequently handle, finger, and feel objects bilaterally is supported by both the opinion evidence and Daniel's activities of daily living. *Orlando A. v. Comm'r of Soc. Sec.,* 2023 WL 5344934, at *4 (W.D.N.Y. Aug. 21, 2023) ("[E]ven if the ALJ erred with respect to Dr. Siddiqui's opinion, [p]laintiff failed to demonstrate prejudice warranting remand . . ..  The ALJ's assessment of physical limitations is more restrictive than Dr. Siddiqui identified is not a basis for remand . . .."); *Jamie D. v. Comm'r of Soc. Sec.,* 2020 WL 6816936, at *4-5 (W.D.N.Y. Nov. 20, 2020) (declining to remand where ALJ assigned partial weight to consultative examiner's opinion that the claimant had no manipulative limitations but still limited the claimant to frequent, gross manipulation).  Moreover, the ALJ questioned and confirmed

---

[6] The ALJ is correct that the jobs identified by the VE are all within level three or four in finger and manual dexterity. *Dictionary of Occupational Titles* 249.587-018, 1991 WL 672349 (Jan. 1, 2016); *id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016); *id.* at 521.687-086, 1991 WL 674226 (Jan. 1, 2016).  But a level three in finger and manual dexterity is defined as the middle 1/3 of the population, and a medium degree of aptitude ability under the final assembler and nut sorter jobs.  *Id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016); *id.* at 521.687-086, 1991 WL 674226 (Jan. 1, 2016).  The only job identified by the VE that corresponds with the ALJ's definition is the document preparer job which is level four (defined as lowest 1/3 excluding bottom 10% of the population), requiring a low degree of aptitude in finger and manual dexterity.  *Id.* at 249.587-018,1991 WL 672349 (Jan. 1, 2016).  Nevertheless, the RFC limiting Daniel to frequently fingering, handling, and feeling objects bilaterally is consistent with the requirements of the jobs suggested by the VE.  *Id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016) (noting someone in this position would be frequently handling and fingering); *id.* at 521.687-086, 1991 WL 674226 (Jan. 1, 2016) (same); *see also Flores v. Comm'r of Soc. Sec.,* 644 F. Supp. 3d 53, 68 (S.D.N.Y. 2022) (finding no error where ALJ's ultimate RFC corresponded with the dexterity levels of the jobs provided by the VE).

that someone with those limitations could perform the jobs identified by the VE.

Daniel's second argument therefore misses the mark as well.

Because the ALJ was "entitled to weigh all of the evidence available to make an

RFC finding that was consistent with the record as a whole," *Matta,* 508 F. App'x at 56,

and because the ALJ did just that, the ALJ's RFC determination was supported by

substantial evidence, and this Court will not second guess it.

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor

did it result from any legal error.  Therefore, and for the reasons stated above, Daniel's

motion for judgment on the pleadings, Docket Item 4, is DENIED, and the

Commissioner's cross-motion for judgment on the pleadings, Docket Item 6, is

GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:       September 30, 2025
             Buffalo, New York


*Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE